**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| TY SUDANO and THOMAS EASTERLING, | ) ) ) | |
| Plaintiffs, | ) ) | No. 2:22-cv-02895-DCN |
| vs. | ) ) ) | **ORDER** |
| TIMOTHY GOODWIN, *a/k/a Tim Goodwin*, *in his individual and official capacities*, FRANKLIN BURKE, *a/k/a Rocky Burke*, *in his individual and official capacities*, ANDREW GILREATH, *in his individual and official capacities*, THE CITY OF FOLLY BEACH, THE CITY OF FOLLY BEACH PUBLIC SAFETY DEPARTMENT, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court on the following cross motions for summary judgment: defendant Franklin Burke's ("Deputy Chief Burke") motion for summary judgment, ECF No. 63; defendants Timothy Goodwin ("Mayor Goodwin"), The City of Folly Beach (the "City"), and The City of Folly Beach Public Safety Department's (the "Public Safety Department") motion for summary judgment, ECF No. 64; defendant Andrew Gilreath's ("Chief Gilreath") motion for summary judgment, ECF No. 65; and plaintiffs Ty Sudano ("Sudano") and Thomas Easterling's ("Easterling) (together with Sudano, "plaintiffs") motion for partial summary judgment, ECF No. 66. For the reasons set forth below, the court grants the motions for summary judgment of Deputy Chief Burke, Mayor Goodwin, the City, the Public Safety Department, and Chief Gilreath. The court denies as moot plaintiffs' motion for partial summary judgment.

1

# I.  BACKGROUND

## A.  Defendants

The City is a municipal subdivision of Charleston, South Carolina.  ECF No. 1, Compl. ¶ 12.  Mayor Goodwin is the mayor of the City.  Id. ¶ 3.  The Public Safety Department is official name the City's police department.  Id. ¶ 13.  Chief Gilreath is the chief of the Public Safety Department.  Id. ¶ 9.  Deputy Chief Burke the deputy chief of the Public Safety Department.  Id. ¶ 6.

## B.  Plaintiff Sudano

Between September 2020 and March 2021, Sudano sent Mayor Goodwin emails to express his dissatisfaction with Mayor Goodwin and the City's response to the Covid-19 pandemic.  Id. ¶¶ 18, 21.  Most of his emails were directly critical of Mayor Goodwin:

-------- Original message --------
From: sudano29412 ███████████████
Date: 9/8/20 2:12 PM (GMT-05:00)
To: Tim Goodwin <tgoodwin@cityoffollybeach.com>
Subject: Mask Mandate

You Sir are a disgrace to this Republic and it's wonderful Constitution.
You are a weak, uneducated pawn of the UN, WHO, CDC and DHEC.
You are a vile human that has sworn his allegiance to a foreign power.
Had you been around in 1776 you would have worn a red coat, in 1941
you would have been a Nazi and today you are a Communist. You sit
in your office surround by the silliest little paramilitary style, joke of a
police department in the entire State of SC.
YOU SIR ARE A CAPON.
YOU SIR ARE ALSO A PATHETIC QUISLING.

On Mon, Dec 21, 2020, 16:21 Nina sudano ████████████████ wrote:

Again? Are you that uneducated and ignorant? Are you brain dead?
Scared of your own shadow? Have you not seen the data? The
science? Even John Hopkins released a report that the amount of
deaths this year were within the normal parameters compared to last
year. There was NO SIGNIFICANT INCREASE! All they've done is
shifted the cause of death to the hoax virus. What the hell do they have
on you? You commie shill. Bro, you are a pathetic excuse for a human.
Do you hide in your closet, under a blankie? Your kids should be
ashamed of having such a weak father, and if you are childless,
hopefully, great job protecting the civil liberties of our future
generations.
I already know what's coming next....
Forced vaccinations right? All over it, right Boss.
Grow a pair, you Constitution betraying, self propelled stomach.
Ty Sudano
████████

ECF No. 64-1 at 1–3. Sudano identified himself in his emails by including his full name,

personal email addresses, phone number, and home address. Compl. ¶ 25.

Sudano alleges that Mayor Goodwin instructed Chief Gilreath and Deputy Chief

Burke to investigate his emails in March 2021. Id. ¶¶ 28–29. Deputy Chief Burke

contacted Sudano's employer by phone. Id. ¶ 33. At the time, Sudano was employed by

a parcel carrier and often delivered packages to the City's government buildings. ECF

No. 96. During the phone conversation, Deputy Chief Burke conveyed concerns

regarding Sudano's emails and told the employer of occasions in October 2020 in which

Sudano did not wear a mask while delivering packages to the City's government

buildings. Id. ¶¶ 33–34. After providing copies of the emails to the employer, Deputy

Chief Burke requested an in-person meeting with Sudano's direct supervisor. Id. ¶ 35.

Deputy Chief Burke arrived at the meeting in a marked Public Safety Department vehicle

and dressed in full uniform. Id. ¶ 36. At the in-person meeting, he again discussed

Sudano's emails, and that Sudano had made deliveries to the City government buildings

without a wearing a required mask in violation of City policy. Id. ¶ 37–39. The

3

supervisor found no issue because it had been determined that Sudano had not sent the emails during work hours and did not wear a mask because of an alleged medical condition.  Id. ¶ 41.

Sudano alleges that, after this meeting, his delivery truck was followed and stopped by the Public Safety Department.  Id. ¶¶ 46–48, 52.  On one occasion, Sudano called 911 to report that he felt frightened by the Public Safety Department.  Id. ¶ 51. Further, Sudano alleges that the City tracked him by flagging his delivery truck and personal vehicles in its license plate reader and camera systems.  Id. ¶¶ 54–63.

### C.  Plaintiff Easterling

On the same day that Sudano began emailing Mayor Goodwin, Easterling also sent Mayor Goodwin emails to criticize his policies and the City's beach closures in response to the Covid-19 pandemic.  Id. ¶¶ 68–70.  Easterling's emails contained identical language to those sent by Sudano:

-------- Original message --------
From: Thomas Easterling <teasterling@dietzandwatson.com>
Date: 9/8/20 3:18 PM (GMT-05:00)
To: Tim Goodwin <tgoodwin@cityoffollybeach.com>
Subject: Coward

You sir, are a pandering coward. Quisling.

Sincerely,
Thomas Easterling


Sent from my Verizon, Samsung Galaxy smartphone

ECF No. 64-7 at 6.  Notably, Easterling emailed Mayor Goodwin using an email account provided to him by his employer.  Compl. ¶¶ 72, 74.

Easterling alleges that Mayor Goodwin instructed the Public Safety Department to investigate his emails.  Id. ¶ 75.  Chief Gilreath contacted the human resources manager of Easterling's employer.  Id. ¶ 77.  During their phone conversation, Chief Gilreath allegedly informed the employer of the contents of Easterling's emails, stated that the Public Safety Department was investigating whether Easterling had possibly sent additional emails from other accounts, and alluded to possible criminal charges for harassment.  Id. ¶¶ 77–78, 96.  Easterling's employer subsequently terminated him.  Id. ¶ 82.  Like Sudano, Easterling alleges that the City has flagged his personal vehicles in its license plate reader and camera systems.  Id. ¶ 104.

### D.  Procedural History

Plaintiffs filed their complaint on August 31, 2022.  ECF No. 1, Compl.  They assert causes of action for (1) First Amendment retaliation under 42 U.S.C. § 1983, (2) intentional and negligent interference with contract, (3) defamation (slander per se and libel per se), and (4) intentional and negligent infliction of emotional distress.  Id. ¶¶ 108–151.

On February 11, 2025, Deputy Chief Burke filed a motion for summary judgment.  ECF No. 63.  Plaintiffs responded in opposition on March 20, 2025.  ECF No. 79.  Deputy Chief Burke replied on March 27, 2025.  ECF No. 87.

On February 11, 2025, Mayor Goodwin, the City, and the Public Safety Department filed a motion for summary judgment.  ECF No. 64.  Plaintiffs responded in opposition on March 18, 2025.  ECF No. 76.  Mayor Goodwin, the City, and the Public Safety Department replied on March 25, 2025.  ECF No. 80.

On February 11, 2025, Chief Gilreath filed a motion for summary judgment. ECF No. 65. Plaintiffs responded in opposition on March 18, 2025. ECF No. 73. Chief Gilreath replied on March 26, 2025. ECF No. 85.

On February 11, 2025, plaintiffs filed a motion for partial summary judgment. ECF No. 66. Deputy Chief Burke, Mayor Goodwin, the City, the Public Safety Department, and Chief Gilreath (collectively, "defendants") responded in opposition, respectively, on March 18, 2025. ECF Nos. 70, 72, 74. Plaintiffs replied on March 25, 2025 and March 26, 2025. ECF Nos. 82, 83, 84. The court held a hearing on the motions on September 8, 2025. ECF No. 96. As such, the motions are fully briefed and ripe for the court's review.

## II.  STANDARD

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In so doing, the court must view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

## III. DISCUSSION

Both plaintiffs and defendants argue that they are entitled to summary judgment. ECF Nos. 63–66. When adjudicating cross motions for summary judgment, the court applies the same standard of review to each motion and considers each motion "separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Defenders of Wildlife v. N.C. Dept. of Transp., 762 F.3d 374, 392 (4th Cir. 2014) (quoting Bacon v. City of Richmond, Va., 475 F.3d 633, 638 (4th Cir. 2007)). The court takes each of plaintiffs' claims and the parties' arguments in turn.

### A. § 1983 First Amendment Retaliation

Plaintiffs assert claims for First Amendment retaliation. Compl. ¶¶ 108–125. Specifically, plaintiffs allege that Mayor Goodwin, Chief Gilreath, and Deputy Chief Burke, in both their official and individual capacities, unconstitutionally retaliated against them for sending critical emails to Mayor Goodwin. Id. ¶ 110. Although not clearly articulated in their filings, plaintiffs appear to assert a Monell claim against the City and the Public Safety Department. See id. ¶¶ 111–119.

### 1. Official Capacity: Mayor Goodwin, Chief Gilreath, and Deputy Chief Burke

Plaintiffs bring First Amendment retaliation claims against Mayor Goodwin, Chief Gilreath, and Deputy Chief Burke in their official capacities.  Compl. ¶¶ 108–125.  "Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent."  Kentucky v. Graham, 473 U.S. 159, 165 (1985) (internal quotations omitted).  "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  Id. at 166 (citing Brandon v. Holt, 469 U.S. 464, 471–72 (1985)).  Because plaintiffs' First Amendment retaliation claims against Mayor Goodwin, Chief Gilreath, Deputy Chief Burke are asserted in their official capacity, their claims are against City and the Public Safety Department.  See id.  As such, the court grants Mayor Goodwin, Chief Gilreath, and Deputy Chief Burke's motions for summary judgment as to plaintiffs' official capacity claims for First Amendment retaliation.

### 2. Individual Capacity: Mayor Goodwin, Chief Gilreath, Deputy Chief Burke

Plaintiffs also bring First Amendment retaliation claims against Mayor Goodwin, Chief Gilreath, and Deputy Chief Burke in their individual capacities.  Compl. ¶¶ 108–125.  Mayor Goodwin, Chief Gilreath, and Deputy Chief Burke each argue that they are shielded by qualified immunity because their investigation of plaintiffs' emails was a law enforcement action that did not violate plaintiffs' First Amendment's rights.  ECF Nos. 63-1 at 10–14, 64 at 9–13, 65 at 11–17.  The parties do not dispute that plaintiffs' emails were protected First Amendment activity.  Id.

"When, as here, a law enforcement officer is sued in his individual capacity, he is 'entitled to invoke qualified immunity, which is . . . immunity from suit itself.'" Cooper v. Sheehan, 735 F.3d 153, 158 (4th Cir. 2013). "'[Q]ualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful.'" Id. (quoting Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011)). In determining whether an officer is entitled to qualified immunity, the court must look to: (1) whether a constitutional violation occurred; and (2) whether the right violated was clearly established, though the court need not decide the issues in that precise order. Id. "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Mullenix v. Luna ex rel. Leija, 577 U.S. 7, 11 (2015). There need not be a "case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).

To determine whether a constitutional violation occurred for the first element of qualified immunity, the court analyzes the three elements of a First Amendment retaliation claim. See Cooper, 735 F.3d at 158. As a necessary corollary to protect the First Amendment's protection of freedom of speech, the "right of free speech includes . . . the right to be free from retaliation by a public official for the exercise of that right." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005) (quoting Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000)). To state a First Amendment retaliation claim, a plaintiff must establish: "(1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his

9

protected activity and the defendant's conduct." Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017).

"A retaliation claim under 42 U.S.C. § 1983 must establish that the government responded to the plaintiff's constitutionally protected activity with conduct or speech that would chill or adversely affect his protected activity." Balt. Sun Co. v. Ehrlich, 437 F.3d 410, 416 (4th Cir. 2006). In the Fourth Circuit, the determination of whether government action has chilling effect or adverse effect is an objective inquiry: whether "the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Constantine, 411 F.3d at 500. A plaintiff must plausibly allege that "defendant's conduct resulted in something more than a de minimis inconvenience to [his] exercise of First Amendment rights." Balt. Sun Co., 437 F.3d at 416. As for the causal relationship, a plaintiff must plausibly allege "but-for cause." Nieves v. Bartlett, 587 U.S. 391, 399 (2019); see Bhattacharva v. Murray, 93 F.4th 675, 688 (4th Cir. 2024), cert. denied, 145 S. Ct. 443 (2024). "It is not enough that the protected expression played a role or was a motivating factor in the retaliation; [a plaintiff] must show but for the protected expression the state actor would not have taken the alleged retaliatory action." Bhattacharva, 93 F.4th at 688 (cleaned up). First Amendment retaliation claims are "administered in a way that balances governmental and private interests to avoid imposing liability in everyday encounters." Snoeyenbos v. Curtis, 60 F.4th 723, 730 (4th Cir. 2023).

The court finds that there is no genuine issue of material fact that the actions of Mayor Goodwin, Chief Gilreath, and Deputy Chief Burke adversely affected plaintiffs' exercise of their First Amendment rights, and thus no First Amendment violation

occurred.  See Martin, 858 F.3d at 249.  Mayor Goodwin, Chief Gilreath, and Deputy

Chief Burke were engaged in a run of the mill law enforcement investigation of

plaintiffs' emails.  See ECF Nos. 63-1 at 10–14, 64 at 9–13, 65 at 11–17.  The evidence

before the court and presented at the hearing demonstrate that their investigation was not

undertaken because plaintiffs' emails expressed a particular political viewpoint or were

critical of Mayor Goodwin and the City, but because plaintiffs' emails were harassing,

contained identical language, and were sent within a close temporal proximity such that a

reasonable law enforcement officer could infer that the emails came from the same

sender using different accounts.  See id.; ECF No. 95.  The court is mindful that the law

enforcement agencies have a significant interest in conducting effective law enforcement

investigations.  See Snoeyenbos, 60 F.4th at 730–31.  Likewise, plaintiffs' exercise of

political speech is at the core for the First Amendment.  See Constantine, 411 F.3d at 499.

As to Sudano, Deputy Chief Burke contacted his employer and conducted an in-

person meeting with his supervisor regarding the emails and Sudano's failure to comply

the City's mask policy while making deliveries to government buildings.  Compl. ¶¶ 33–

45.  Sudano's delivery truck was stopped and allegedly followed by officers of the Public

Safety Department.  Id. ¶¶ 46–52.  Here, when viewed objectively, the actions of

defendants were merely de minimis to Sudano's exercise of his First Amendment rights.

See Balt. Sun Co., 437 F.3d at 416.  Sudano concedes in his filings and at the motion

hearing that, even after the events giving rise to his claim occurred, he continued to send

critical emails to political figures in the City and surrounding Charleston, South Carolina

area.  ECF No. 95.  Thus, Sudano's exercise of his First Amendment free speech rights

was not chilled at all.  See Constantine, 411 F.3d at 500.

11

As to Easterling, Chief Gilreath contacted his employer regarding Easterling's emails because they came from the employer's email address. Compl. ¶ 76. Easterling alleges that Chief Gilreath told his employer that he was investigating the email sent by Easterling, that similar emails to those sent by Easterling had been sent from other accounts, and that Easterling could face criminal charges for harassment. Id. ¶ 78. These events, viewed objectively, did not chill or adversely affect Easterling's speech. See Constantine, 411 F.3d at 500. At base, Easterling's claim is that his exercise of his First Amendment rights was chilled because his employer terminated him. See Compl. ¶¶ 76–78, 122. However, Easterling's employer stated that he was terminated for violation of company policy regarding harassment. ECF No. 65, Exhibits EE, DD, FF. Like Sudano, the actions of defendants were merely de minimis to Easterling's exercise of his First Amendment rights. See Balt. Sun Co., 437 F.3d at 416. Easterling's allegations against Chief Gilreath are merely post hoc rationalizations for his termination. See Compl. Because neither Sudano nor Easterling's exercise of their First Amendment rights was chilled or adversely affected, the court finds that there is no genuine issue of material fact that the actions of Mayor Goodwin, Chief Gilreath, and Deputy Chief Burke violated plaintiffs' that First Amendment rights.

For the second element of the qualified immunity, the court looks to whether the violated right was clearly established. See Cooper, 735 F.3d at 158. When determining if a right is clearly established, the court must consider whether it would be clear to a reasonable official that his or her "conduct was unlawful in the situation he [or she] confronted." Henry v. Purnell, 652 F.3d 524, 534 (4th Cir. 2011) (en banc). For this step of the analysis, the Fourth Circuit has held that "it is not required that a right violated

already have been recognized by a court in a specific context before such right may be held 'clearly established' for purposes of qualified immunity." Meyers v. Baltimore Cnty., 713 F.3d 723, 734 (4th Cir. 2013) (observing that "officials can still be on notice that their conduct violates established law even in novel factual circumstances").

Of course, the First Amendment encompasses "the right to be free from retaliation by a public official for the exercise of that right." Suarez, 202 F.3d at 685; (quoting ACLU v. Wicomico Cnty., Md., 999 F.2d 780, 785 (4th Cir. 1993) ("Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights.")); see also Pickering v. Board of Educ., 391 U.S. 563, 574 (1968) (noting that retaliatory acts are "a potent means of inhibiting speech"). This court has recognized that, even where a plaintiff establishes that the speech at issue was protected, "[c]ourts in this circuit have held that retaliatory investigations are not constitutional violations in the First Amendment context and cannot support a section 1983 claim." Pidanick v. LaRosa, 2019 WL 10894089, at *8 (D.S.C. Mar. 15, 2019), report and recommendation adopted sub nom. Pidanick v. LaRosa, 2019 WL 10894095 (D.S.C. Apr. 22, 2019), aff'd, 791 F. App'x 431 (4th Cir. 2020);  see also Singletary on behalf of N.M.M. v. Cumberland Cty. Sch., 2016 WL 8711336, at *8 (E.D.N.C. Feb. 12, 2016) ("Plaintiff's claim of retaliatory investigation based on her exercise of freedom of speech fails as a matter of law."); Nance v. Ingram, 2015 WL 5719590, at *8 (E.D.N.C. Sept. 29, 2015) ("there is no clearly established right not to be the subject of a retaliatory investigation"). Accordingly, because the court finds that Mayor Goodwin, Chief Gilreath, and Deputy Chief Burke did not violate plaintiffs' First Amendment rights and did not violate any

13

clearly established right in undertaking an investigation of plaintiffs' emails, they are entitled to qualified immunity in their individual capacities. Cooper, 735 F.3d at 158. As such, the court grants Mayor Goodwin, Chief Gilreath, and Deputy Chief Burke's motions for summary judgment as to plaintiffs' individual capacity claims for First Amendment retaliation.

### 3. The City and The Public Safety Department – <u>Monell</u>

Plaintiffs ostensibly assert a <u>Monell</u> claim against the City and the Public Safety Department for First Amendment retaliation as an alternative to their claims against Mayor Goodwin, Chief Gilreath, and Deputy Chief Burke. See Compl. ¶¶ 111–112. Plaintiffs allege that "Defendants' actions constituted [the City or the Public Safety Department's] policy or custom" and that Mayor Goodwin and Chief Gilreath "instituted and approved." Id. ¶ 111.

Municipalities and other local government units may be held liable under § 1983. <u>Monell v. Dep't of Soc. Servs. of N.Y.</u>, 436 U.S. 658, 690 (1978). But "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Id. at 691 (emphasis in original); see <u>Connick v. Thompson</u>, 563 U.S. 51, 60 (2011) (holding that local governments "are not vicariously liable under § 1983 for their employees' actions"). Thus, a plaintiff who seeks to assert a § 1983 claim against a municipality or county is obliged to "to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." <u>Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown</u>, 520 U.S. 397, 403 (1997) (citing <u>Monell</u>, 436 U.S. at 694).

In the Fourth Circuit,

> [a] policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

Starbuck v. Williamsburg James City Cnty. Sch. Bd., 28 F.4th 529, 533 (4th Cir. 2022) (quoting Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003)) (alteration in original and other citations omitted).

Plaintiffs have provided the court with nothing more than a single conclusory allegation of a policy or custom of the City or the Public Safety Department. See Compl. In essence, plaintiffs' Monell claim against the City and the Public Safety Department is improperly premised on a respondeat superior theory, repackaging their claims against Mayor Goodwin, Chief Gilreath, and Deputy Chief Burke in their official and individual capacities. See Compl; Connick, 563 U.S. at 60. As such, the court grants the City and the Public Safety Department's motions for summary judgment as to plaintiffs' claims for First Amendment retaliation.

### B. State Law Claims

The court turns to plaintiffs' South Carolina state law claims for intentional and negligent interference with contract, defamation (slander per se and libel per se), and intentional and negligent infliction of emotional distress. Compl. ¶¶ 126–151.

At the outset, plaintiffs' claims against Mayor Goodwin, Chief Gilreath, and Deputy Chief Burke are barred by the South Carolina Tort Claims Act ("SCTCA"). Under the SCTCA, "only the entity employing the employee whose act gives rise to the claim may be sued." S.C. Code Ann. § 15-78-70(c). As such, the court grants Mayor

Goodwin, Chief Gilreath, and Deputy Chief Burke's motions for summary judgment as to plaintiffs' South Carolina state law claims.

Next, plaintiffs' South Carolina state law claims against the City and the Public Safety Department improperly aggregate the actions of Mayor Goodwin, Chief Gilreath, and Deputy Chief Burke to the City. See Compl. ¶¶ 126–151. Plaintiffs' make no specific allegations against the City or the Public Safety Department, and they fail to cite to any legal authority for their claims. See id. Plaintiffs' conclusory allegations against the City and the Public Safety Department, which they do not substantively oppose in their briefs, do not create a genuine issue of material fact. See Fed. R. Civ. P. 56(c). As such, the court grants the City or the Public Safety Department's motions for summary judgment as to plaintiffs' South Carolina state law claims. The court proceeds to plaintiffs' remaining claims.

### 1. Intentional and Negligent Interference with Contract

Plaintiffs assert claims for intentional and negligent interference with contract. Compl. ¶¶ 126–133. The court dispenses with plaintiffs' claim for negligent interference with contract because "South Carolina has declined to recognize a cause of action for the recovery of pure pecuniary harm resulting from a tortfeasor's negligent interference with a plaintiff's contractual relationships." Self v. Norfolk Southern Corp., 2007 WL 540373, at *4 (D.S.C. Feb. 15, 2007) (citing Edens & Avant Inv. Props., Inc. v. Amerada Hess Corp., 456 S.E.2d 407, 407 (S.C. 1995).

To establish a claim for intentional interference with contract, a plaintiff must show (1) the existence of a contract or prospective contract, (2) knowledge of the contract, (3) intentional procurement of its breach, (4) the absence of justification, and (5)

16

resulting damages.  Eldeco, Inc. v. Charleston Cty. Sch. Dist., 642 S.E.2d 726, 731 (S.C. 2007).

Sudano concedes his claim because he was not terminated from employment. ECF Nos. 73 at 28 n.7, 76 at 32 n.10, 79 at 22.  "An essential element to the cause of action for tortious interference with contractual relations requires the intentional procurement of the contract's breach . . . Where there is no breach of the contract, there can be no recovery."  Hall v. UBS Fin. Servs. Inc., 866 S.E.2d 337, 344 (S.C. 2021) (quoting Eldeco, 642 S.E.2d at 732).  As such, the court grants Mayor Goodwin, Chief Gilreath, and Deputy Chief Burke's motions for summary judgment as to Sudano's claim for intentional and negligent interference with contract.

Easterling was terminated from employment.  Compl. ¶ 82.  He alleges that Chief Gilreath intentionally caused his termination by telling his employer that the Public Safety Department was investigating the emails that Easterling had sent from the employer's email address, that Easterling had possibly sent additional emails from other accounts, and that Easterling could face criminal charges for harassment.  Id. ¶¶ 75–81. Chief Gilreath argues that Easterling was terminated for violations of his employer's policies.  ECF No. 65 at 19–20.  Easterling's employer stated in its deposition that no one associated with the City requested that Easterling be terminated.  ECF No. 65, Exhibit DD.  Further, Easterling's employer confirmed that he was terminated for sending harassing emails from the email account provided to him by his employer.  Id. Accordingly, there is no genuine dispute that Easterling's termination was not intentionally procured by Chief Gilreath.  See Eldeco, 642 S.E.2d at 731.  As such, the court grants Mayor Goodwin, Chief Gilreath, and Deputy Chief Burke's motions for

summary judgment as to Easterling's claim for intentional and negligent interference with contract.

### 2.  Defamation (Slander <u>Per Se</u> and Libel <u>Per Se</u>)

Plaintiffs assert claims for slander <u>per se</u> and libel <u>per se</u>, alleging that Chief Gilreath and Deputy Chief Burke made verbal and written statements to their employers that accused plaintiffs of "dangerous and criminal behavior and character" and "suggest unfitness for their professions."  Compl. ¶¶ 137–138.  Plaintiffs make no allegation that Mayor Goodwin, himself, made any statement.  <u>See</u> <u>id.</u>: ECF No. 76 at 35.  Further, plaintiffs conceded at the motion hearing that defendants did not make any actionable, written statements.  ECF No. 96.  Chief Gilreath and Deputy Chief Burke argue that their statements were shielded by a qualified privilege.  ECF Nos. 63-1 at 28–26; 65 at 19–26.

Defamation claims can be brought for either libel or slander.  <u>Parrish v. Allison</u>, 656 S.E.2d 382, 388 (S.C. Ct. App. 2007).  "Libel is the publication of defamatory material by written or printed words," while slander is "spoken defamation."  <u>Id.</u>  To bring a successful claim for defamation, a plaintiff must prove: "(1) a false and defamatory statement was made; (2) the unprivileged publication of the statement was made to a third party; (3) the publisher was at fault; and (4) either actionability of the statement regardless of special harm or the publication of the statement caused special harm."  <u>Kunst v. Loree</u>, 817 S.E.2d 295, 302 (S.C. Ct. App. 2018), <u>reh'g denied</u> (Aug. 16, 2018).

"The publication of a statement is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."  <u>Fleming v. Rose</u>, 567 S.E.2d 857, 860 (S.C. 2002).

Defamatory statements are either defamatory per se or defamatory per quod. Parrish, 656 S.E.2d at 388. A statement is defamatory per se if its defamatory meaning is clear from the statement standing alone; if the reader of the statement must know additional facts or circumstances outside of the statement in order to understand its defamatory nature, then the statement is defamatory per quod. Id.

Under the fourth element, the plaintiff must either prove that he suffered special harm from the allegedly defamatory statement or demonstrate that the statement is otherwise "actionable." Defamation is actionable per se when the statements impute the plaintiff with one of the following acts or characteristics: "(1) commission of a crime of moral turpitude; (2) contraction of a loathsome disease; (3) adultery; (4) unchastity; or (5) unfitness in one's business or profession." Goodwin v. Kennedy, 552 S.E.2d 319, 322–23 (S.C. Ct. App. 2001). When a statement falls into one of these categories and is thus actionable per se, the court presumes that the defendant acted with common law malice and that general damages are present.

The court finds that Chief Gilreath and Deputy Chief Burke's statements to plaintiffs' employers are protected by a qualified privilege. Under a qualified privilege defense, "one who publishes defamatory matter concerning another is not liable for the publication if (1) the matter is published upon an occasion that makes it conditionally privileged, and (2) the privilege is not abused." Swinton Creek Nursery v. Edisto Farm Credit, ACA, 514 S.E.2d 126, 134 (S.C. 1999). South Carolina courts grant a qualified privilege to communications "made in good faith on any subject matter in which the person communicating has an interest or duty . . . if made to a person with a corresponding interest or duty even though it contains matter which, without this

privilege, would be actionable." Constant v. Spartanburg Steel Prods., Inc., 447 S.E.2d 194, 196 (S.C. 1994). To assert the privilege, "[t]he publisher must not wander beyond the scope of the occasion." Id. In general, the question whether an occasion gives rise to a qualified or conditional privilege is one of law for the court." Bell v. Bank of Abbeville, 38 S.E.2d 641, 643 (S.C. 1946).

Here, Chief Gilreath and Deputy Chief Burke made the statements at issue during a law enforcement investigation. Constant, 447 S.E.2d at 196. Plaintiffs' employers had a corresponding interest in the subject matter of the communications—i.e., that one of their employees was possibly sending harassing emails during working hours and using his employer's resources. See id. Plaintiffs do not dispute that Chief Gilreath and Deputy Chief Burke made their statements within the bounds of their investigation. See Compl. Consequently, the occasion on which the statements were made and common interest of the Chief Gilreath and Deputy Chief Burke and plaintiffs' employers give rise to a qualified privilege. See Swinton, 514 S.E.2d at 134.

Even if the court were to find that Chief Gilreath and Deputy Chief Burke's statements were not protected by a qualified privilege, there is no genuine issue of material fact that neither Sudano nor Easterling suffered any harm to their reputations. Kunst, 817 S.E.2d at 302. When asked about harm to his reputation caused by Deputy Chief Burke's statements, Sudano stated, "My friends and family, nothing has really changed" and that his friends, family, and employer all remained supportive of him. Sudano Dep. 190:12-25. Sudano's partner and supervisor both stated that he retained, even gained, standing in the community for expressing his views as a result of Deputy Chief Burke's contact with Sudano's employer. See ECF No. 65, Exhibits RR, SS.

Easterling's partner likewise stated that she did not feel his status had changed.  See id., Exhibit YY.  As such, the court grants Mayor Goodwin, Chief Gilreath, and Deputy Chief Burke's motions for summary judgment as to both theories of plaintiffs' claims for defamation.

### 3.  Intentional and Negligent Infliction of Emotional Distress

Plaintiffs assert claims for both intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED").  Compl. ¶¶ 146–151.  Sudano's claims appear to be premised the Public Safety Department allegedly following and stopping his delivery truck.  See id. ¶¶ 46–53.  Easterling claims concern Chief Gilbreath contacting his employer.  See id. ¶¶ 67–107.

In South Carolina, a claim for IIED, or "outrage," must establish:

(1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from his conduct; (2) the conduct was so "extreme and outrageous" so as to exceed "all possible bounds of decency" and must be regarded as "atrocious, and utterly intolerable in a civilized community;" (3) the actions of the defendant caused plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was "severe" such that "no reasonable man could be expected to endure it."

Hansson v. Scalise Builders of S.C., 650 S.E.2d 68, 70 (S.C. 2007) (quoting Ford v. Hutson, 276 S.E.2d 776, 778 (S.C. 1981)).  Importantly, the conduct that gives rise to an outrage claim may be either intentional or reckless.  See id.

Rather than substantiate their claims with detailed allegations, plaintiffs take issue with the routine investigatory actions taken by Chief Gilreath and Deputy Chief Burke.  See Compl.  South Carolina courts have expressed that IIED claims must not become "a panacea for wounded feelings rather than reprehensible conduct."  See Hansson, 650 S.E.2d at 70.  Plaintiffs merely recite the elements of an IIED claim in their filings.  See

Compl; ECF Nos. 73, 76, 79.  Their failure to provide anything other than conclusory allegations of the emotional distress that they allege to have suffered is fatal to their IIED claim.  See Davis v. Hinson, 2007 WL 9753167, at *4 (D.S.C. Dec. 26, 2007) (granting summary judgment on claim for intentional infliction of emotional distress where "plaintiff has failed to show any evidence of severe emotional distress").  Consequently, the court finds that there is no genuine issue of material fact that Chief Gilreath and Deputy Chief Burke did not act with the requisite level of intent and that their conduct did not rise to the level of "extreme and outrageous."  See Hansson, 650 S.E.2d at 70.  As such, the court grants Mayor Goodwin, Chief Gilreath, and Deputy Chief Burke's motions for summary judgment as to both theories of plaintiffs' claims for IIED.

     South Carolina courts limit claims for NIED are "to the bystander context."  K.S. by & through Seeger v. Richland Sch. Dist. Two, 912 S.E.2d 240, 244 (S.C. 2025) (citing Kinard v. Augusta Sash & Door Co., 336 S.E.2d 465, 467 (S.C. 1985)).  Plaintiffs do not allege that were not bystanders in close proximity to a death or serious bodily injury caused by defendants.  See Kinard, 336 S.E.2d at 467.  As such, the court grants Mayor Goodwin, Chief Gilreath, and Deputy Chief Burke's motions for summary judgment as plaintiffs' claims for NIED.

*     *     *

     Plaintiffs' brief in support their motion for partial summary judgment is identical to their briefs in opposition to defendants' motions for summary judgment.  Compare ECF No. 66-1 with ECF Nos. 73, 76, 79.  Because the court finds there is no genuine dispute of material fact as to any of plaintiffs' claims and grants defendants' motions for

summary judgment, the court denies as moot plaintiffs' motion for partial summary judgment.

### IV.   CONCLUSION

For the foregoing reasons the court **GRANTS** Deputy Chief Burke's motion for summary judgment, **GRANTS** Mayor Goodwin, the City, and the Public Safety Department's motion for summary judgment, **GRANTS** Chief Gilreath's motion for summary judgment, and **DENIES AS MOOT** plaintiffs' motion for partial summary judgment.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 30, 2025**
**Charleston, South Carolina**

23